UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MUHAMMAD ZAHID CHAUDHRY,<br><br>                    Petitioner,<br>     v.<br><br>PAMELA BONDI,<br><br>                    Respondent. | CASE NO. 2:25-cv-02339-DGE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 28) |

Petitioner seeks a writ of habeas corpus ordering the Respondents to release him from detention. Petitioner is civilly detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") based on a February 27, 2020 order of removal issued by the Board of Immigration Appeals ("BIA").[1] The 2020 removal order is the subject of a pending appeal before the Ninth Circuit Court of Appeals. On May 19, 2020, the Ninth Circuit entered an order staying removal until the issuance of a mandate or further order of the Ninth Circuit.

---

[1] This is the basis an immigration judge used to deny Petitioner's release; though as explained later, Respondents now argue a different basis to continue Petitioner's detention.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 28) - 1

Upon the Ninth Circuit's affirmative order staying removal, Respondents lacked authority to enforce the 2020 order or removal, *see* 8 U.S.C. § 1231(a), and therefore lacked authority to detain Petitioner without due process. Accordingly, Petitioner's detention was and is unlawful, and Respondents are ordered to release Petitioner.

## I    BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Pakistan who became a legal permanent resident on April 25, 2001. (Dkt. No. 9-2 at 7.) He was placed in removal proceedings on August 27, 2008 (*Id*. at 5; *see also* Dkt. No. 31 at 2), based on allegations he fraudulently obtained legal permanent resident status and based on an alleged false claim to United States Citizenship. (Dkt. No. 9-2 at 3.) Petitioner was summoned to appear before an immigration judge in the Seattle Immigration Court. (*Id*. at 5.) The record is void of any order authorizing Petitioner's detention during the pendency of his removal proceedings, which means Petitioner remained at liberty while in removal proceedings.

During the pendency of his removal proceedings, Petitioner filed an application to adjust (or readjust) status to that of a lawful permanent resident based on his marriage to a United States citizen. (*Id*. at 7.) On March 12, 2018, an immigration judge granted Petitioner's application to adjust status and otherwise granted Petitioner relief from removal from the United States. (*Id*. at 3.) The government appealed the March 2018 order to the BIA. (*Id*.) It appears that during this time, Petitioner filed an application for naturalization based on his prior United States military service. (*Id*.) His application for naturalization was denied on November 4, 2019 and the denial was reaffirmed by United States Citizenship and Immigration Services ("USCIS") on June 26, 2023. (*Id*.)

On February 27, 2020, the BIA reversed the immigration judge's March 2018 order, denied Petitioner's application to adjust status to that of a legal permanent resident, and ordered Petitioner removed from the United States. (*Id*.) On March 27, 2020, Petitioner appealed the BIA's decision to the Ninth Circuit and asked for an order staying removal pending a decision on appeal. (*Id*.) On May 19, 2020, the Ninth Circuit entered an order staying removal "until issuance of the mandate or further order of the court." (*Id*.; *Chaudry v. Bondi*, No. 20-70877 (9th Cir.), Dkt. No. 11.) Respondents acknowledge they lack authority to remove Petitioner pending a decision from the Ninth Circuit. (Dkt. No. 31 at 4) ("ICE cannot remove Petitioner to Pakistan at this time due to the pending [Petition for Review] with the Ninth Circuit Court of Appeals.").

On May 22, 2020, Petitioner filed a motion to reopen his removal proceedings before the BIA. (Dkt. No. 9-2 at 3.) The BIA denied this motion on November 1, 2021. (*Id*.) Petitioner appealed the BIA's denial to the Ninth Circuit, *see Chaudry v. Bondi*, No. 21-1160 (9th Cir.). Both of Petitioner's appeals before the Ninth Circuit have been consolidated into one matter. *See Chaudhry v. Bondi*, No. 20-70877 (9th Cir.), Dkt. No. 30.

Though unclear when, or how many, naturalization applications Petitioner has filed, Petitioner was scheduled for a naturalization interview on August 21, 2025. (Dkt. No. 9-2 at 3.) USCIS contacted and informed ICE of the scheduled interview. (*Id*.) Immediately following the interview, and without any prior notice or opportunity to be heard, Petitioner was taken into custody and transferred to the NWIPC. (*Id*.)

Petitioner remains in custody at the NWIPC. An immigration judge has denied his request for release finding "No Jurisdiction" because of a "Final Order of Removal." (Dkt. Nos. 32-1, 32-2). Petitioner has appealed the immigration judge's denial of his request for release to the BIA. (Dkt. No. 31 at 4).

B. **Procedural Background**

On November 17, 2025, Petitioner filed with the Ninth Circuit an "Emergency Motion for Release Pending Decision." (*See* Dkts. 1, 1-1.) The Ninth Circuit construed "the emergency motion as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241," and ordered "that the motion be transferred to the appropriate district court for consideration in the first instance." (Dkt. No. 1-1.) Accordingly, this Court received Petitioner's initial petition/motion on November 20, 2025. (Dkt. Nos. 1, 2.) Petitioner amended his petition twice. (*See* Dkt. Nos. 19, 28.) Petitioner's operative petition (Dkt. No. 28) and his accompanying motion for TRO (Dkt. No. 27) were filed on December 5, 2025. Because the motion for TRO effectively asks the Court to order Petitioner's release, i.e., grant his petition for issuance of a writ of habeas corpus, the Court construed the motion as a request to expedite, ordered a briefing schedule, and scheduled a hearing. (Dkt. No. 34.)

Petitioner's operative petition brings seven claims against Respondents: (1) unlawful detention under 8 U.S.C.§ 1226(a), (2) procedural due process violations, (3) substantive due process violations, (4) violations of "Equal Protection / CARRP Discrimination," (5) violations of the Americans with Disabilities Act and Rehabilitation Act, (6) Administrative Procedure Act violations, and (7) a claim under the "Suspension Clause / Preservation of the Habeas Remedy." (Dkt. No. 28 at 75–82.)

Having received the briefing of the parties, the Court held a hearing on December 22, 2025.

## II. JURISDICTION

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241. "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to

immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–1212 (9th Cir. 2011)).

### III.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

When a noncitizen is ordered removed, the government is directed to remove the noncitizen "from the United States within a period of 90 days (in this section referred to as the '*removal period*')." 8 U.S.C. § 1231(a)(1)A) (emphasis added).

The removal period begins on the *latest* of the following:

(i)    The date the order of removal becomes administratively final.
(ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
(iii)  If the alien is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added). "During the removal period, the Attorney General shall detain the [noncitizen]." 8 U.S.C. § 1231(a)(2)(A). Thus, "[o]nce the removal

period . . . begins, [the noncitizen] will be taken into custody pursuant to [a] warrant of removal." 8 C.F.R. § 241.3(a).  But the execution of a warrant of removal is delayed "upon [ ] affirmative order of [a Federal] court."  8 C.F.R. § 241.3(c).

Thus, the "statute makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008).  "[T]he plain language of § 1231(a) provides no authority to detain aliens . . . whose removal order is *administratively*—but not *judicially*—final."  *Id*. at 1060.

## IV.   ANALYSIS

Among the many claims and arguments Petitioner raises, Petitioner asserts his detention is "procedurally unconstitutional under *Matthews v. Elridge*." (Dkt. Nos. 27 at 3; 28 at 2.) Petitioner argues "ICE seized Petitioner . . . based on a removal order that is functionally non-final, legally non-operative, and under active appellate review." (*Id*.)  Petitioner contends his custody "violates the Fifth Amendment's Due Process Clause" and that "it is premised on a stayed removal order that cannot support mandatory custody." (Dkt. Nos. 43 at 3; 28 3–4.) Petitioner concludes, "[w]here a petition for review is pending and a stay of removal has been entered by the Ninth Circuit, the removal order is not final for detention purposes." (*Id*. at 6.)

### A. Petitioner's procedural due process claim is properly before this Court.

Petitioner's procedural due process claim directly addresses the legality of Petitioner's detention.  Nonetheless, Respondents argues Petitioner should be required "to exhaust his administrative remedies concerning his custody status before seeking habeas relief in this Court."

(Dkt. No. 30 at 9.) But exhaustion of administrative remedies is a prudential not jurisdictional matter that will be imposed only where

> '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)). Here, Petitioner challenges not only the statutory basis for his detention but also the constitutional basis for his detention. Irreparable injury will result if Petitioner must wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)).

Accordingly, Petitioner's procedural due process claim is properly before this Court.

**B. Fifth Amendment Due Process**

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates

> the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335.

   1.   Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi*, 542 U.S. at 529; *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So it is unsurprising that "[t]he Supreme Court has repeatedly recognized that individuals who have been

released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). Logically, the same is true of any person who, while in removal proceedings, was never detained.

Consequently, because Petitioner was allowed to remain on his own recognizance during the entirety of his removal proceedings (since August 27, 2008), he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025). Undeniably, this liberty interest remained during the over five years Petitioner remained at liberty pursuant to the Ninth Circuit's order staying his removal. Accordingly, the first *Matthews* factor favors Petitioner.

      2.     <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" 424 U.S. at 335. The risk of an erroneous deprivation is not only high in this instance, it has manifested in this case.

Respondents assert in their briefing that "Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231." (Dkt. 30 at 9.) This position is clearly erroneous because "the plain language of § 1231(a) provides no authority to detain aliens . . . whose removal order is *administratively*—but not judicially—final." *Prieto-Romero*, 534 F.3d at 1060. Here, it is undisputable that Petitioner appealed the BIA 2020's administrative order of removal to the Ninth Circuit and that the appeal remains pending. It is further undisputable that as of May 19, 2020, the Ninth Circuit

entered an order staying removal "until issuance of the mandate or further order of the court" and no further order has been issued.

Realizing that § 1231 could not form the basis to detain Petitioner in light of the Ninth Circuit's order staying removal, Respondents shifted[2] their legal position at oral argument by asserting Petitioner's detention was authorized by 8 U.S.C. § 1226(a), which allows the government to detain a noncitizen pending a decision on removal.  But as noted above, Petitioner previously was summoned to attend his removal proceedings in 2008 and thereafter allowed to be at liberty during the pendency of his removal proceedings.  Respondents, therefore, had already determined there was no reason to detain Petitioner under § 1226(a).  And, as acknowledged by Respondents' counsel, over the prior months, courts in this circuit have repeatedly, consistently, and with growing frequency found constitutional violations where individuals are detained at check-ins or appointments without prior notice or opportunity to be heard.  *See Ramirez Tesara*, 2025 WL 2637663, at *4; *Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); ); *Dejesus v. Bostock*, No. 25-cv-01427-JHC-TLF, 2025 WL 3268002, at *3–4 (W.D. Wash. Nov. 24, 2025); *Ho v. Noem*, No. C25-2222-RSM-MLP, 2025 WL 3466923, at *4 (W.D. Wash. Nov. 24, 2025), *report and recommendation adopted*, No. C25-2222-RSM, 2025 WL 3471855 (W.D. Wash. Dec. 3, 2025); *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251, at *4 (W.D. Wash. Nov. 3, 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8

---

[2] Respondents' counsel stated at oral argument that counsel and Respondents errored in asserting § 1231 was the basis for Petitioner's detention.  And while the Court appreciates counsel's mea culpa, it does not change the fact that Petitioner was held in custody for four months and denied release by an immigration judge on a **clearly erroneous** basis in the first instance.  At some point, as noted by a colleague of this Court in a different matter, one has to ask, "where were the lawyers?"

(W.D. Wash. Oct. 7, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025); *see also Lara v. Noem*, No. 5:25-cv-3072-ODW (JCx), 2025 WL 3255001, at *4–5 (C.D. Cal. Nov. 19, 2025); *Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB (HC), 2025 WL 2545359, at *5 (E.D. Cal. Sept. 4, 2025).

The procedure Respondents relied on to detain Petitioner resulted in the erroneous deprivation of Petitioner's liberty interest. The second *Matthews* factor weighs in favor of Petitioner.

3. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen with a final order of removal appears when necessary to facilitate their removal and in ensuring the noncitizen is not a danger to the community. *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). But there is no evidence the government's interests have ever been at risk since Respondent was placed in removal proceedings on August 27, 2008. Since that date, up until and including on August 21, 2025, Petitioner has always appeared before an immigration judge, USCIS, and any other government official when required and Respondents' identify no basis to conclude Petitioner presents as a danger to the community.

Accordingly, the Court finds that the government's interest in detaining Petitioner, who has not violated any requirements during the pendency of his removal proceedings, without a

pre-detention hearing or some other pre-detention process is low. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low") (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as Respondents did here—is constitutionally deficient.

In sum, all three *Mathews* factors favor Petitioner. Petitioner's detention with no process at all violates the due process protections afforded to him by the Constitution.[3]

## V.    CONCLUSION

The Court GRANTS the petition for writ of habeas corpus. (Dkt. No. 28.) The Court ORDERS Respondents to release Petitioner from custody, and further, ORDERS that, absent an order from the Ninth Circuit lifting the stay of removal, Petitioner may not be re-detained until after he is provided written notice of the basis for revoking his release along with an appropriate opportunity to respond to notice. Within **TWENTY-FOUR (24)** hours of this order,

---

[3] Because the Court finds that Petitioner's detention violates the Due Process Clause, and thus affords relief on that basis, it does not reach Petitioner's other causes of action. The Court, however, notes that some of the claims asserted pertain to the underlying removal order, review of which is pending before the Ninth Circuit and for which this Court lacks jurisdiction. See 28 U.S.C. § 1252(g). Still others do not go to the core of habeas and are not properly before the Court under 28 U.S.C. § 2241. *See Pinson v. Carvajal*, 69 F.4th 1059, 1070 (9th Cir. 2023) (noting that the "core of habeas" pertains only to claims where release is the only available remedy). Finally, the Court will note that Petitioner has raised serious concerns regarding his health and what appears to be Respondents' inability to provide appropriate medical care. (Dkt. No. 28-1 at 49.) As of the date of this order, there is no indication Respondents are appropriately treating Petitioner's Thyroid Eye Disease after approximately four months of detention. Respondents have "not yet secured an ophthalmology appointment for Petitioner" and it is not clear when such appointment will occur. (Dkt. No. 44 at 1–2.) But again, because the Court is granting relief on other grounds, the Court does not decide Petitioner's Due Process Clause claim based on alleged inadequate medical care.

1 | Respondents must provide the Court with a declaration confirming that Petitioner has been
2 | released from custody.
3 |     This Order grants Petitioner's release pursuant to 28 U.S.C. § 2241 based on Petitioner's
4 | procedural due process claim only and otherwise denies all other claims without prejudice as
5 | MOOT.  All pending motions or other requests are hereby STRICKEN.
6 |     Dated this 22nd day of December, 2025.

David G. Estudillo
United States District Judge